# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRIS I. ROBISON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-14-1262-D ) |
| RELIANCE STANDARD LIFE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Plaintiff Chris Robison (Robison) participated in a short-term disability plan and a long-term disability plan sponsored by her employer, SandRidge Energy, Inc. (SandRidge) and administered by Defendant Reliance Standard Life Insurance Company (Reliance). Both plans were subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Reliance denied Robison's claim for benefits, which was affirmed in a subsequent administrative appeal. Robison now appeals that denial in this Court under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1). *See* Petition, ¶ 9 [Doc. No. 1-2]. Before the Court are Robison's Opening Brief on Appeal and Reliance's Motion for Summary Judgment [Doc. Nos. 30, 31]. The matter is fully briefed and at issue.

## BACKGROUND

Robison was employed by SandRidge as a payroll administrator, where she was enrolled in SandRidge's group short-term disability (STD) plan (Policy No. STD 158778) and long-term disability (LTD) plan (Policy No. LTD 115067). The STD policy pays weekly disability benefits to an insured who is "disabled due to Sickness or Injury." Under the STD policy, "disabled" means that an insured was "(1) unable to do the material duties of his/her job; and (2) not doing any work for payment; and (3) under the regular care of a physician." "Injury" means "bodily injury resulting directly from an accident, independent of all other causes. The injury must cause disability which begins while an Insured."

The LTD policy, which defines "injury" in substantially the same manner as the STD policy, paid monthly disability benefits following 180 consecutive days of disability (the "Elimination Period") to an insured who remains "Totally Disabled" as a result of an injury or sickness. Throughout the duration of the Elimination Period and the following twenty-four (24) months, the LTD policy defined "Total Disability" to mean that an insured cannot perform the material duties of her regular occupation, and "Total Disability" was, from that point, defined as the insured's inability to perform the material duties of any occupation for which she is qualified by education, training or experience.

With respect to submitted claims, the STD policy provided that for any covered loss, written proof must have been sent to Reliance within ninety (90) days. If it was not reasonably possible to provide notice within the prescribed time period, the policy stated the claim was not affected if proof was sent as soon as reasonably possible. In addition, the STD policy provided that no legal action could be brought on the policy within sixty (60) days after written proof of loss had been given, and no action could be brought after three years from the time written proof of loss was required to be given.

The LTD policy stated that written notice of a claim must be provided to Reliance within thirty-one (31) days after a Total Disability covered by the policy occurred, or as soon as reasonably possible. If a claimant did not receive the claim forms within fifteen (15) days after receiving notice, then proof of Total Disability would be met by giving Reliance a written statement of the type and extent of the Total Disability within ninety (90) days after the loss began. Written proof of Total Disability was to be submitted within ninety (90) days after Total Disability occurred or as reasonably possible. In any event, the LTD policy stated proof of Total Disability must have been provided within one year after Total Disability occurred, unless the insured was legally incapable of doing so. With respect to legal actions, the LTD policy stated no legal action could be brought to recover on the policy within sixty (60) days after written proof of loss had been given, and no

action could be brought after three (3) years from the time written proof of loss was received.

Both the STD and LTD policies stated the following:

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

On September 5, 2007, Robison was involved in a car accident in which she sustained several injuries. She returned to work on February 25, 2008 and continued to work until December 14, 2008, when she underwent surgery due to an infection. According to her statement to Reliance, Robison last worked at SandRidge on March 31, 2009, when she worked "about 1/3 of [the] day" but left due to experiencing chronic pain in her back and foot, as well as experiencing cognitive difficulties. Robison stated her reason for leaving SandRidge was due to termination.[1]

During the course of rehabilitation and treatment, Robison was evaluated by several doctors who monitored her progress. Dr. W. Bentley Edmonds examined Robison and noted she was experiencing only mild pain while in a walking boot. Dr. Edmonds noted Robison's wounds had fully healed and there was no sign of

---

[1] In SandRidge's papers submitted to Reliance, the company stated Robison's last day at work was on April 4, 2009 and that she worked a full day, as opposed to 1/3 of a day, and that she was laid off, as opposed to being terminated.

infection. After seeing Robison on follow up appointments, Dr. Edmonds noted Robison was doing well, her pain was reasonably controlled, and she was going to advance her activities and eventually wean off of the boot. Dr. Matthew Diesselhorst also observed that Robison's surgical incisions were healing well, and that although she continued to experience tenderness in her foot, she had good range of motion and was steadily improving. He also recommended that she slowly wean herself from the boot.

Following another appointment with Robison, Dr. Edmonds observed she was "doing as well as could be expected" from her injuries and would likely need medical management for her pain. Dr. Edmonds referred Robison to Dr. A.J. Bisson for pain management, who also noted Robison's surgical incisions were healing well. Dr. Bisson recommended Robison undergo minimal physical therapy to alleviate a gait in her walk. Dr. Bisson adjusted Robison's medication and noted that Robison "look[ed] to be doing amazingly well." Dr. Edmonds later observed that Robison displayed good ankle motion without any pain and that she was very happy with her progress. Robison was also examined by Dr. Jeffrey Cruzan for a long history of depression. She was observed as "feel[ing] much better and happier" and exhibited no signs of homicidal or suicidal thoughts.

Robison subsequently filed for, and received, social security disability benefits from her inability to be gainfully employed in any occupation since April

1, 2009. On December 14, 2012, Robison submitted short term and long term disability claims to Reliance. Reliance classified and evaluated Robison's claim based on her ability to perform sedentary work. On July 13, 2013 and July 15, 2013, Reliance denied Robison's claims on the basis the records did not demonstrate she was "disabled" as those terms were defined under the respective policies. Robison administratively appealed the denial, alleging she was unable to do light duty work without assistance from her co-workers. Robison also submitted a report by Dr. Darren Elenburg that stated (1) she could not alternately stand, sit, walk or drive over an eight-hour day and (2) she had reached maximum medical improvement and could not return to work. Robison also submitted a vocational evaluation performed by Dr. Lon Huff that stated she met the policy definition of "long term disability" on April 5, 2009.

Reliance conducted a coordinated review of the LTD and STD claim denials and Robison's objections thereto. Its review showed that Dr. Elenburg first observed Robison in 2008. In October 2009, he noted that Robison's fractures had healed, but that her hardware implants were painful and may require removal in the future, but no surgery was planned at the time. In the report cited by Robison, Dr. Elenburg noted that over the course of an 8-hour day, Robison could not alternately stand, sit, walk, or drive. Dr. Elenburg also noted, however, Robison could perform sedentary work in an 8-hour day, and was not limited in her abilities

to (1) relate to other people beyond giving and receiving instructions, (2) complete and follow instructions, (3) perform simple and repetitive tasks, and (4) perform complex and varied tasks. Dr. Elenburg also noted Robison possessed the mental capacity to understand her finances and direct the use of her funds and could drive occasionally.

In his review of Robison's medical records, Dr. Huff relied on Dr. Elenburg's determination that she could not sit, stand, walk or drive over the course of an eight-hour day, and ten pounds was her maximum weight lifting limit. Dr. Huff stated Robison's test results indicated she had the mental ability to learn and manipulate novel information, but such tests were short and would not cause fatigue the way an eight-hour work day would. Dr. Huff concluded that based on Reliance's definition of "disability" under the STD and LTD policies, Robison met the definition because she was unable to perform the material duties of her job due to, *inter alia*, her chronic pain and inability to concentrate and work accurately. Thus, he concluded, Robison could not perform her occupation as a payroll administrator.

Reliance requested an independent medical peer review to review Robison's medical records and determine whether there was any support for her claim of disability. The review, conducted by Dr. Daniel Rosenberg, concluded Robison

"should be capable of performing work of at least a sedentary basis." Dr. Rosenberg expounded by stating,

> In my opinion, this claimant should have had work capacity in a full time consistent basis as of 04/04/09 ongoing, in at least a sedentary capacity. ... [T]he claimant was apparently working as a payroll administrator as of April 2009. This would at least be a sedentary type position, which in my opinion, the claimant should be capable of performing.

On March 13, 2014, Reliance upheld the denial of Robison's disability claims. Robison filed the present suit on July 30, 2014, and Reliance removed to this Court on November 12, 2014.

## STANDARD OF REVIEW

Under ERISA, insurance companies are to provide accurate claims processing by insisting that administrators provide a full and fair review of claim denials. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). Under the standard of review for ERISA claims established by the Tenth Circuit, federal courts are limited to the administrative record – the materials compiled by the plan administrator in the course of making its decision. *Hall v. UNUM Life Ins. Co. of America*, 300 F.3d 1197, 1201 (10th Cir. 2002). Where, as here,[2] an ERISA

---

[2] As noted above, both insurance policies provide that Reliance has the discretionary authority to interpret the policies and to determine eligibility for benefits. Thus, the "arbitrary and capricious" standard is applicable to the decision challenged here. Both parties are in agreement on this issue. *See* Pl. Opening Br. at 10-11; Def. Mot. for Summ. J. at 15.

provider explicitly retains the authority to interpret its governing provisions, courts employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious. *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011); *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008). Applying this standard,[3] courts ask "only whether the interpretation of the plan was reasonable and made in good faith." *Id*. (citation omitted). Courts look to the governing provisions of the instrument as a whole and consider the common and ordinary meaning of the language used. *Id*. at 1011.

Moreover, a court reviews the plan administrator's decision to determine if the decision is supported by substantial evidence, which means "more than a scintilla of evidence that a reasonable mind could accept as sufficient to support a conclusion." *Eugene S.*, 663 F.3d at 1134 (citations and internal quotations

---

[3]Robison contends Reliance acted under a conflict of interest as insurer and payor of claims under the policies. Consequently, she states less deference is owed to its decision. "[A]ll of the circuit courts agree that a conflict of interest triggers a less deferential standard of review." *Chambers v. Family Health Plan Corp*., 100 F.3d 818, 825 (10th Cir. 1996). Rather than viewing a conflict of interest as presumptive evidence that the plan administrator's decision was arbitrary and capricious, the Tenth Circuit applies a sliding scale, decreasing the level of deference in proportion to the severity of the conflict. *Id*. at 826-27. However, although Robison contends Reliance's dual role as insurer and payor of claims under the policies constitutes a conflict of interest, she has presented no evidence showing that the conflict affected its determination. Nonetheless, based on the record before it, the Court finds any conflict of interest created by Reliance's dual role had minimal impact and did not drive its benefit determination.

omitted). The Court will uphold the decision of the plan administrator as long as it is predicated on a reasoned basis. *Id*. There is no requirement that the basis relied upon by the administrator be the only logical one or even the best one. *Id*.; *see also Schandel v. Siebert*, 175 F. Supp. 3d 1238, 1245 (D. Colo. 2016) ("The decision need not be the only logical decision nor even the best decision. Rather, the decision need only be sufficiently supported by facts known to the plan to counter a claim that the decision was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis. The reviewing court "need only assure that the administrator's decision falls somewhere on a continuum of reasonableness - even if on the low end.") (citations and paraphrasing omitted).

Although Reliance has moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, it would be imprudent to utilize the summary judgment standard of review to this case. "The purpose of a summary judgment motion is to assess whether a trial is necessary." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007) (citation omitted). To that end, "ERISA cases are replete with factual disputes and, in order to treat [Reliance's brief] as a motion for summary judgment, the Court would have to disregard the plain language of Rule 56." *Tinkler v. Level 3 Commc'ns, LLC*, No. 07-CV-259, 2008 WL 199901, at *7 (N.D. Okla. Jan. 22, 2008) (citing *Wilkins v. Baptist Healthcare System*, 150 F.3d 609, 619 (6th Cir. 1998)).

Rather, as noted, courts have held the judge's appropriate role is to act as an appellate court, where the reasonableness of the administrator's decision is based on a review of the record. *See Panther v. Synthes*, 380 F. Supp. 2d 1198, 1207 n. 9 (D. Kan. 2005). This view is in accord with the Tenth Circuit's decision in *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994), where the circuit held a district court should proceed as an appellate court in reviewing agency action under the arbitrary and capricious standard. *Panther, supra* ("The court joins other district courts in this circuit which have applied the Tenth Circuit's decision in [*Olenhouse*] and held that the summary judgment standard is not the proper standard when evaluating a denial of ERISA benefits under arbitrary and capricious review."). The circuit in *Olenhouse* stated motions for summary judgment are "conceptually incompatible" with the very nature and purpose of an appeal. *Id*. at 1580; *see also Leahy v. Raytheon Co.*, 315 F.3d 11, 17 (1st Cir. 2002) (discussing the "discongruence" between the ERISA and summary judgment standards of review).

Accordingly, in an ERISA case where a party has moved for summary judgment, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death &*

*Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (citation omitted) (internal quotation marks omitted). The Court, thus, evaluates the reasonableness of Reliance's decision based on the evidence contained in the administrative record.

## DISCUSSION

Robison argues that Reliance's denial of her STD and LTD benefits claim was arbitrary, capricious, and unreasonable, and that the decision should be reversed for five reasons: (1) the vocational evidence on record clearly established Robison was disabled; (2) Reliance relied upon deficient medical evidence; (3) Reliance failed to consider other key evidence; (4) Reliance failed to consider additional evidence submitted by Robison or provide a sufficient reason for disregarding evidence stating Robison was disabled; (5) Reliance failed to adequately consider the findings of the social security administrative law judge that determined Robison was disabled as of April 1, 2009. Reliance contends its decision is supported by substantial evidence and Robison's claims are time-barred.

As stated *supra*, under the STD policy, "disabled" means that a claimant was (1) unable to do the material duties of her job; (2) not doing any work for payment; and (3) under the regular care of a physician. The LTD policy defined "Total Disability" to mean a claimant could not perform the material duties of her regular

occupation, and, after a specified duration, the claimant was unable to perform the material duties of any occupation for which she is qualified by education, training or experience. Further, a claimant was required to show that she had been "disabled" continuously for 180 consecutive days in order to receive LTD benefits.

Robison worked for SandRidge as a payroll administrator, and its description of her job duties included balancing and controlling earnings and deduction totals; processing voluntary and involuntary deductions; calculating and preparing mid-period entries, reviewing timekeeping schedules, and reviewing taxation and accounting transactions. The Vocational Evaluation noted the job also included duties such as (1) strong organizational skills and ability to problem solve with a high level of attention to detail and accuracy, and (2) the ability to work under time constraints and meet daily and weekly deadlines. Therefore, under the policies, a payroll administrator would be disabled if she could not materially perform these listed tasks.

The Court finds the medical evidence in the administrative record supports Reliance's denial of benefits. The controlling standard dictates that the Court reverse Reliance's decision "only if the evidence clearly shows that the administrator's actions were arbitrary and capricious or the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." *Caldwell v. Life Ins. Co. of North America*, 287 F.3d

13

1276, 1289 (10th Cir. 2002) (citations omitted). Even if the Court would reach a different conclusion, the test of an arbitrary and capricious decision is whether the decision-maker's conclusion was predicated on a *reasoned basis*; there is no requirement that the basis relied upon be the only logical one or even the best one. *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1134 (10th Cir. 2011). A plan administrator has the discretion to weigh conflicting evidence in the record and make a determination regarding a claimant's eligibility for benefits, and a final determination will not be found to be unsupported by substantial evidence merely because there was evidence in the record that *would have* supported a finding of disability. *See, e.g., Roganti v. Metropolitan Life Ins. Co.*, 786 F.3d 201, 212 (2d Cir. 2015) ("[I]f the administrator has cited 'substantial evidence' in support of its conclusion, the mere fact of conflicting evidence does not render the administrator's conclusion arbitrary and capricious.") (citation omitted); *Vonhagn v. Corning Inc.*, 590 F. Supp. 2d 418, 420 (W.D.N.Y. 2008) ("The existence of conflicting evidence, even a conflicting opinion from a claimant's treating physician, does not necessarily render the Plan Administrator's decision arbitrary and capricious.") (citation omitted).[4]

---

[4]Indeed, "courts have no warrant to require [ERISA Plan] administrators automatically to accord special weight to the opinions of a claimant's treating physician; nor may courts impose a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830-831 (2003).

The record evidence shows that Robison did not leave her job due to injury or disability, but that she was laid off from employment. The medical records in evidence consistently noted that several treating doctors, over the course of Robison's rehabilitation and treatment, noted that she experienced only mild pain, her pain was gradually improving, and she was happy with her progress. Other records reflected Robison possessed the mental capacity to understand her financial affairs and direct the use of her funds. In addition, an independent medical record peer review ordered by Reliance concluded, among other things, she was capable of performing sedentary work. Based on the then-existing record at the time of Robison's accident, Reliance's initial denial and subsequent denial of Robison's appeal is adequately supported and not arbitrary and capricious. There was substantial evidence supporting Reliance's determination that Robison was not unable to perform the material functions of her job, or that she was continuously disabled for 180 days. The policies at issue grant Reliance the discretionary authority to interpret them and determine eligibility for benefits, and Robison has not submitted sufficient evidence to show that Reliance arbitrarily disregarded the opinions of her treating physicians and her claims of disability. Therefore, the Court rejects Robison's claims and finds that Reliance did not abuse its discretion in denying those claims.

## CONCLUSION

Having reviewed the administrative record, the Court finds that Reliance's decision to deny Robison's claim for disability benefits was not arbitrary and capricious. Rather, the record contains sufficient facts to show that Reliance's decision was reasonable and based on substantial evidence in the record. Accordingly, the Court **GRANTS** Reliance's Motion for Summary Judgment [Doc. No. 30] and **AFFIRMS** the denial of benefits. A judgment shall be issued forthwith.

**IT IS SO ORDERED** this 10th day of March, 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE